(Court of Appeal, Parish of Orleans).

## ALPHONSE MARX vs. FERNWOOD LUMBER CO.

Issues of fact only are involved herein.

Appeal from the Civil District Court, Division "E."

Dinkelspiel, Hart & Davey, for plaintiff and appellant.

O. M. Dunn, P. P.

Hall & Monroe, for defendant and appellee.

DUFOUR, J.—The plaintiff, a resident of New Orleans, by foreign attachment sues the defendant, a non-resident corporation, and seeks to recover the amount of a draft paid, freight and costs of unloading a car containing rails and appurtenances shipped to plaintiff by defendant under a contract of sale.

It is alleged that plaintiff was not allowed to inspect the car until he had paid the draft and that, after examination, he ascertained that defendant had violated its contract by shipping "scrap iron and not iron covered by the contract."

After negotiations and correspondence between the parties beginning about June 16, 1908, they entered into a written agreement of date July 23, 1908, to confirm the purchase of steel rails and appurtenances fully described and which contained the following clause:

> "It is understood and agreed that you are to ship nothing among these rails that is absolutely scrap, which is to be left to your own judgment and discretion."

On the very day the contract was signed, Marx went

to Fernwood to attend to the matter and inspected the rails. After so doing, he dictated a contract in which he sought to have defendant guarantee the rails as "first class relayers," "good relayers" and "relayers." Enochs, manager of the defendant corporation, refused to make any guarantee as to grade, quality or condition and insisted that the purchaser rely on his own inspection.

Then, it was agreed that the matter should be left to defendant's discretion and judgment and the contract was signed.

On August 1, 1908, defendant offered plaintiff to sell him other steel rails and certain iron rails, and on August 3rd, plaintiff, by letter, accepted the offer and wrote that they had,

> "booked the purchase * * * subject to exact conditions as stated in contract with you dated July 23, 1908 * * * and confirm offer made by you for the lot of iron rail * * * based on the same terms and conditions as the steel."

It would seem plain that all of the transactions between the parties were intended to be governed by the conditions of the agreement of July 23, and to be governed by the purchaser's inspection, and, not the vendor's guarantee.

Basing himself on the fact that in a letter of August 13th, the defendant refers to the iron rails as "relayers," the plaintiff urges that defendant sold and represented them as such.

This contention admits of two conclusive answers.

In the first place the letter was written after the contract for the iron rails had been concluded on the same terms and conditions as the steel rails under the agreement of July 23, 1908.

Next, it is incredible that defendant should have intended to change their view and offer a guarantee when, from the beginning, it had insisted on an inspection by plaintiff and a purchase at his own risk.

The record does not warrant the plaintiff's assumption that he was, under his contract, entitled to good relaying rails; the most that he could claim is that nothing "absolutely scrap" in the judgment and discretion of the defendant should be shipped.

The plaintiff freely left the matter to the discretion of the defendant; his only right is to claim that this discretion shall not be arbitrarily exercised but fairly and honestly bestowed.

The testimony of employees of the defendant is that the rails were fit for relaying and that none of them were "absolutely scrap."

The testimony of plaintiff's witness, that many of the rails were unfit for any purpose except melting down, appears to have been based upon a general and superficial examination, and does not appear to have made much impression on the trial judge.

The plaintiff's demand was properly rejected by the district judge, and the value of the contents of the car attached was properly allowed defendant on his reconventional demand.

Damages resulting from the illegal attachment in the sum of $150 are claimed "in the nature of attorney's fees, travelling and other expenses, and for injury in business and reputation."

An objection was made and sustained that the items were to vague and uncertain to be susceptible of proof. Considering that the amount claimed for such damages might easily have been specifically set forth and brought to the notice of the adverse party, we are not inclined to

disturb the ruling or the judgment of non-suit as to the claim for damages.

Judgment affirmed.

April 3, 1911.

Rehearing refused, May 1, 1911.

Writ denied by Supreme Court, June 20, 1911.